UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 09-57 |
| JOHN DELCO | SECTION M (3) |

## ORDER & REASONS

Before the Court is defendant John Delco's emergency COVID-19 motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and request for appointment of legal counsel.[1] The government opposes the motion.[2] Delco supplements his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Delco's motion.

## I. BACKGROUND

On June 3, 2009, Delco, without a plea agreement, pleaded guilty to the following counts of the indictment filed against him: Count 3, conspiracy to distribute less than 50 kilograms of marijuana; Counts 4, 5, and 7, distribution of less than 100 grams of marijuana; Counts 8, 9, 12, and 14, convicted felon in possession of a firearm; and Counts 11 and 13, distribution of less than 100 grams of heroin.[4] On September 9, 2009, the Court sentenced Delco to imprisonment for 60 months as to Counts 3, 4, 5, and 7; 120 months as to Counts 8, 9, 12, and 14; and 210 months as to Count 11 and 13, to be served concurrently.[5] Delco is presently incarcerated at the Federal Medical Center in Butner, North Carolina ("FMC Butner"), operated by the Bureau of Prisons (the

---

[1] R. Doc. 219.
[2] R. Doc. 223.
[3] R. Doc. 224.
[4] R. Doc. 118 at 1-5.
[5] R. Doc. 57. The sentence was imposed before the case was reassigned to this section of court upon the confirmation of the undersigned. R. Doc. 196.

"BOP"). His projected release date is January 15, 2024.[6]

On May 11, 2020, due to the outbreak of the COVID-19 pandemic, Delco submitted to the BOP a request for compassionate release pursuant to the First Step Act, explaining that he has hypertension (one of the COVID-19 risk factors identified by the Centers for Disease Control ("CDC")), and requesting that he be placed in home confinement or a halfway house.[7] On May 18, 2020, the FMC Butner warden informed Delco that his request was denied because he did not meet the criteria for a reduction in sentence in accordance with guidelines established under "BOP Program Statement 5050.50," specifically, he did not meet the criteria under "Debilitated," explaining that he is "independent of [his] activities of daily living and [his] current medical conditions are under control."[8] On May 28, 2020, Delco tried again, submitting a request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or transfer to home confinement for the remainder of his sentence pursuant to 18 U.S.C. § 3624(c)(2), section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and the Attorney General's April 3, 2020 Memorandum to the Director of the BOP, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19."[9] Delco represented that he is at risk because he is over the age of 50 (although his records show he is 49, and does not turn 50 until the end of 2020),[10] suffers from hypertension, had back surgery in

---

[6] Inmate Locator, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed on Aug. 6, 2020).

[7] R. Doc. 219-1 at 22.

[8] *Id.* at 19. According to the government's communications with BOP legal counsel, the BOP also considered whether Delco was eligible for home confinement in accordance with the Attorney General's March 26, 2020 memorandum directing the Director of the BOP to prioritize transferring at-risk inmates to home confinement where appropriate in light of the COVID-19 pandemic. R. Doc. 223 at 5, 7; *see* Memorandum from the Attorney General to the Director of the BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf. The BOP determined that Delco was not a candidate for home confinement because his Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") score indicated he had a medium, rather than minimum, risk of recidivism. R. Doc. 223 at 7.

[9] R. Doc. 219-1 at 15.

[10] *Id.* at 2.

2

December 2015, has neck and leg nerve damage, and is an African-American male.[11] On June 23, 2020, Delco appealed the warden's denial of his request (according to Delco, the request was denied on June 19, 2020), arguing that the denial was based on the "old" Program Statement 5050.50, even though that program statement was updated and amended by the Attorney General on March 26, 2020.[12] On June 26, 2020, the warden denied his appeal, explaining that Delco was found not to be medically compromised and has a "medium" PATTERN risk score, and that the Attorney General's expansion of the BOP's authority, in order to address the difficulties associated with the COVID-19 pandemic, was not an amendment to the program statement.[13]

## II.   PENDING MOTION

Delco, *pro se*, now asks the Court to grant him compassionate release and/or release to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and to appoint him counsel.[14] According to Delco, the BOP has identified FMC Butner as a COVID-19 "hot spot."[15] Delco asserts that his age, race, gender, and medical conditions (which in his brief he lists as hypertension, high cholesterol, a heart murmur, allergies, and asthma) place him at a higher risk of serious or deadly illness were he to contract COVID-19.[16] As support for his argument that permitting him to serve the remainder of his sentence in home confinement is warranted, Delco also highlights his inmate record, which he describes as "exemplary" and which includes completing 63 education courses, maintaining employment, and maintaining good conduct for nearly nine years.[17]

---

[11] *Id.* at 15-16.
[12] R. Doc. 224 at 3.
[13] *Id.* at 4.
[14] R. Doc. 219.
[15] R. Doc. 219 at 2.
[16] *Id.* at 2-4, 8.
[17] *Id.* at 3-4.  Among the records he attaches to his motion, Delco includes a laudatory work evaluation by a nurse dated May 30, 2020, for the performance of his duties as an "ICP (Inmate Companion Program)."  *See* R. Doc. 219-1 at 7.

In opposition, the government argues that Delco has not shown "extraordinary and compelling reasons" warranting release under § 3582(c)(1)(A)(i), because although a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19 may satisfy this standard, Delco's asserted conditions (*viz.*, his age – which the government emphasizes is 49, not over 50 as Delco asserts; race; hypertension; nerve damage; previous back surgery) do not.[18]  With respect to hypertension, the government explains that the CDC has concluded "that there are insufficient data to reach any conclusion other than that the condition 'might' present a risk of a severe outcome from the disease," a finding which, in the government's view, does not support the notion that Delco suffers from a serious medical condition as classified by the U.S. Sentencing Commission in its policy statement addressing reduction of sentences under § 3582(c)(1)(A).[19]  Moreover, the government argues, Delco has not asserted that the BOP is not providing him with adequate care, nor has he shown that his medical conditions, standing alone, are sufficiently extraordinary to qualify for compassionate release.[20]  Next, the government posits that Delco has failed to demonstrate that he is not a danger to the safety of the community or that he merits release under the applicable 18 U.S.C. § 3553(a) factors, emphasizing Delco's pleading guilty to drug and firearm crimes based on conduct which was not isolated to a single instance and in which he involved others, and his criminal history of similar offenses.[21]  The government observes that Delco has more than three years remaining on his sentence, and argues that releasing him early would lead to unwarranted sentencing disparities among similarly-situated defendants.[22]  Addressing Delco's alternative request for placement in home confinement, the government maintains that the Court has no authority to order the BOP to transfer him to home

---

[18] R. Doc. 223 at 10-16.
[19] *Id.* at 10, 14 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)).
[20] *Id.* at 15-16.
[21] *Id.* at 16-18.
[22] *Id.* at 18-19.

4

confinement, as the BOP has sole authority over an inmate's placement, with consideration given to the sentencing court's non-binding recommendation.[23]

## III. LAW & ANALYSIS

### A. Appointment of Counsel

Delco moves for appointment of legal counsel due to his present incarceration and limited access to email, the law library, and telephone due to periodic institutional lockdowns.[24] There is, however, no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). In the context of 18 U.S.C. § 3582(c)(2) motions, which are analogous to 18 U.S.C. § 3582(c)(1)(A)(i) motions like Delco's, "the Fifth Circuit has held that defendants have no statutory or constitutional right to counsel." *United States v. Joseph*, 2020 WL 3128845, at *1 (E.D. La. June 12, 2020) (citing *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995), and *United States v. Moore*, 400 F. App'x 851, 852 (5th Cir. 2010)). "Although a defendant in a § 3582(c) motion does not have a statutory or constitutional right to appointment of counsel, the Court may appoint counsel in the interest of justice." *United States v. Mogan*, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020) (quoting *United States v. Rodriguez*, 2015 WL 13664966, at *2 (S.D. Tex. Aug. 20, 2015) (citing *United States v. Robinson*, 542 F.3d 1045, 1051-52 (5th Cir. 2008))); *see* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Here, the interests of justice do "not require the appointment of counsel because defendant's motion does not involve complicated or unresolved issues." *See Joseph*, 2020 WL 3128845, at *2 (quoting *Moore*, 400 F. App'x at 852 (addressing § 3582(c)(1)(A)(i) motion on

---

[23] *Id.* at 19-21.
[24] R. Doc. 219 at 1-2, 5.

appeal)) (internal citation and alterations omitted); *see also United States v. Drayton*, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) ("[A] claim for compassionate release is not particularly complex factually or legally."). Nor is there any indication that Delco – who submitted a thorough, albeit ultimately unsuccessful 22-page brief with multiple exhibits – is incapable of adequately presenting his motion *pro se*.25  *See Joseph*, 2020 WL 3128845, at *2 ("[Defendant's] submissions do not reveal her to be incapable of pursuing this matter pro se."); *see also United States v. Hames*, 2020 WL 3415009, at *1 (E.D. Tex. June 19, 2020) (denying appointment of counsel for defendant seeking compassionate release who was literate, completed high school, submitted well-reasoned, albeit ultimately unsuccessful brief, and provided no basis to suggest that appointment of counsel would help him obtain relief). The appointment of counsel is not warranted.

### B. Compassionate Release

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582." *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010). Section 3582(c), as amended by the First Step Act, provides that "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).26 "The Sentencing

---

25 Delco's records confirm that he is proficient in English, has received a high school diploma or its equivalent, and has completed dozens of education courses while incarcerated. *See* R. Doc. 219-1 at 2-3.

26 The policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, resulting in a discrepancy as to who may bring § 3582(c) motions in court (the relevant policy statement continues to provide that a term of imprisonment may be reduced only upon a motion by the director of the BOP), which has led some courts to conclude that the Sentencing Commission does not have a policy position applicable to motions brought by defendants pursuant to the First Step Act, while others have

Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or 'serious physical or medical condition' that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *Perdigao*, 2020 WL 1672322, at *1 (quoting U.S.S.G. § 1B1.13). The policy statement also provides that a sentence may only be reduced if the court determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large posed by the defendant's release. 18 U.S.C. § 3142(g).

A court may not consider a defendant's § 3582 motion for a modification of a term of imprisonment until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier … ." 18 U.S.C. § 3582(c)(1)(A). "The requirement that an inmate first exhaust his administrative remedies within the BOP is jurisdictional." *United States v. Gentry*, 2020 WL 2131001, at *2 (W.D. La. May 5, 2020) (citing *Garcia*, 606 F.3d at 212 n.5); *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (characterizing the defendant's failure to exhaust administrative remedies as "a glaring roadblock foreclosing compassionate release at this point").[27] "Even in the context

---

held that the policy statement may be helpful but not dispositive in deciding such motions. *United States v. Perdigao*, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (discussing U.S.S.G. § 1B1.13, and collecting cases). The Court agrees with those courts finding that the relevant policy statement is instructive to the determination of whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. *See id.*; *United States v. LeBlanc*, 2020 WL 2331690, at *2 (E.D. La. May 11, 2020) (citations omitted).

[27] The Court notes that district courts within the Fifth Circuit are split on whether this exhaustion requirement is jurisdictional and thus not amenable to waiver or other exceptions. *United States v. Powell*, 2020 WL 4210478, at

of the COVID-19 pandemic, a defendant must first satisfy the exhaustion criteria of 18 U.S.C. § 3582(c)(1)(A) in order for the Court to have jurisdiction over a motion for a compassionate release sentence reduction." *United States v. Castro*, 2020 WL 3076667, at *1 (E.D. La. June 10, 2020) (collecting cases). "This conclusion is supported by a number of cases in which courts have addressed motions for compassionate release under the FSA [First Step Act] due to COVID-19 and found they do not have the authority to address those motions when the defendants have not first satisfied the exhaustion requirements of the FSA." *United States v. Guyton*, 2020 WL 2128579, at *2 (E.D. La. May 5, 2020) (quotation omitted; collecting cases). The defendant must demonstrate that he has exhausted his administrative remedies and that he is entitled to compassionate release. *Castro*, 2020 WL 3076667, at *2 (citations omitted); *see United States v. Murray*, 2020 WL 4000858, at *2 (E.D. La. July 15, 2020) (explaining that the defendant bears the burden of demonstrating (1) whether he has exhausted administrative remedies; (2) whether extraordinary and compelling reasons warranting release exist; and (3) whether he poses a danger to the safety of any other person or society) (citing *United States v. Davis*, 2020 WL 2838588, at *2 (E.D. La. June 1, 2020)).

### 1. *Exhaustion of administrative remedies*

Although not challenged by the government, the Court addresses whether Delco has fully exhausted administrative remedies and finds that he has not. *See United States v. Greenlove*, 2020 WL 3547069, at *3 (M.D. Pa. June 30, 2020) (addressing exhaustion "despite the government's misplaced concession on this issue"); *Blevins*, 2020 WL 3260098, at *2 ("Although the

---

*3 (S.D. Miss. July 22, 2020) (citing *United States v. Echols*, 2020 WL 2309255, at *2 (N.D. Miss. May 8, 2020) (comparing cases)). Regardless, § 3582(c)(1)(A) "does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise." *United States v. Blevins*, 2020 WL 3260098, at *2 (S.D. Miss. June 16, 2020) (citation omitted); *see also United States v. Ng Lap Seng*, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020) ("[I]t does matter whether section 3582(c) is a jurisdictional statute or a non-jurisdictional claim-processing statute, because its exhaustion requirement is clearly statutory and therefore mandatory.") (citations omitted).

Government seems to concede that there has been exhaustion, the Court finds that the Defendant failed to exhaust his administrative remedies.").

Delco states that because the warden denied his request for a reduction in sentence, he has exhausted his administrative remedies.[28] But Delco is mistaken: it is precisely ***because*** the warden denied his May 11, 2020 request within 30 days after its submission that he has not exhausted his administrative remedies. *See Greenlove*, 2020 WL 3547069, at *6 ("[I]f the warden responds to defendant's request within 30 days, then defendant must exhaust all of his BOP administrative rights to appeal the warden's decision … .") (citations omitted); *see also Blevins*, 2020 WL 3260098, at *3 ("By failing to appeal the warden's decision to the Regional Director, [the defendant] has not fully exhausted his administrative rights and the [motion] must be dismissed."). Delco does not show that he has fully exhausted his administrative rights to appeal the warden's denial of his request through the BOP's Administrative Remedy Procedure as set forth in 28 C.F.R. §§ 542.13 through 542.15, which would entail appealing the warden's decision to the appropriate regional director, and then, if unsatisfied with the regional director's decision, appealing this decision to the General Counsel of the BOP. *See Powell*, 2020 WL 4210478, at *3 (citing 28 C.F.R. §§ 542.10 & 542.15(a), and *Petzold v. Rostollan*, 946 F.3d 242, 254 (5th Cir. 2019)); *see also Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 & 4205(g)*," FED. BUREAU OF PRISONS (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf (explaining the administrative remedy procedure, and that a denial of an inmate's request by the General Counsel or Director of the BOP constitutes a "final administrative decision"). Although "[s]ome courts have interpreted the phrase 'lapse of 30 days from the receipt of such a request by the warden' to mean … that the exhaustion

---

[28] R. Doc. 219 at 7 (citing R. Doc. 219-1 at 19).

requirement is satisfied when 30 days have passed from the date the warden receives a request from a defendant that the BOP file a compassionate release motion on the defendant's behalf, even where the BOP has responded to or taken action on the request," this Court is in agreement with those "[o]ther courts [that] have interpreted this language to mean that exhaustion is only satisfied when 30 days have passed from the date the warden receives the request *and* BOP has not taken any action on it." *Powell*, 2020 WL 4210478, at *2 (comparing cases, and agreeing with the latter position; emphasis in original); *see Ng Lap Seng*, 2020 WL 2301202, at *6 (interpreting § 3582(c)(1)(A)'s "lapse" language "as requiring the BOP's **failure to respond** to a prisoner's request for a compassionate release motion within thirty days," because interpreting the language to simply mean "a passage of time" would "substantially undermine one of the goals of an exhaustion requirement – protecting agency authority, expertise, and the opportunity to correct mistakes – as it would allow a defendant to come to court before the agency has rendered a final decision and foreclose higher-level BOP review of a request" and in many cases "render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants … would forego appealing a warden's denial of their compassionate release request") (citations, quotation marks, and alterations omitted; emphasis added); *see also United States v. Early*, 2020 WL 2572276, at *3 (W.D. Pa. May 21, 2020) ("The BOP is in the best position to consider the myriad of factors necessary in rendering a decision [whether compassionate release is warranted].") (citing *Raia*, 954 F.3d at 597); *United States v. Bolino*, 2020 WL 32461, at *2 (E.D.N.Y. Jan. 2, 2020) ("Congress clearly wanted these applications [for compassionate release] decided at the administrative level if possible.").

As to his May 28, 2020 request, Delco asserts that he has exhausted his administrative

10

remedies by appealing to the warden the June 19, 2020 denial of his request.[29] Once again, Delco has not shown that he has appealed the warden's decision fully through the BOP's Administrative Remedy Procedure, and hence he has not exhausted his administrative remedies. *See, e.g., Greenlove*, 2020 WL 3547069, at *3 ("[S]ince the Warden timely responded to all of [the defendant's] requests, [the defendant] cannot directly file his motion with the court without exhausting his administrative remedies.").[30]

---

[29] R. Doc. 224 at 1.

[30] Moreover, even if the warden had not timely responded to this second request and appeal, Delco would not have exhausted his administrative remedies because Delco's second request for compassionate release is not materially different from his first request, which remains unexhausted. *See United States v. Bing*, 2020 WL 4043610, at *2 (D.S.C. July 17, 2020) (holding that the court had no jurisdiction to hear motion filed by defendant who failed to appeal denial of his first request for compassionate release and submitted a second request seeking the warden's signature for the first request, to which the warden had not yet responded). Although it is more detailed than his first request, Delco's second request has the same underlying basis – his allegedly heightened risk of a severe reaction to COVID-19 infection due to his underlying conditions – as that of his first request.

Had the BOP determined that Delco's request for compassionate release, as presented in his first request, was meritorious, it would not have been limited to basing a motion brought on his behalf on the one medical condition (hypertension) Delco listed in his first request if it believed that other conditions – such as those listed in his second request – provided support for relief; nor, had the warden neglected to timely respond to the first request, would Delco have been so limited in bringing a motion in court. *See United States v. Gluzman*, 2020 WL 4233049, at *11 (S.D.N.Y. July 23, 2020) ("[T]he statute contains no requirement that the basis for the defendant's motion for compassionate release to the court be ***identical*** to the basis of the defendant's request to the warden of the BOP to bring a motion on the defendant's behalf. … Nor does the statute require her to restart the process if she seeks the same ultimate relief from the court (as she does through her request to the warden) but on ***somewhat different, or differently articulated***, grounds. For that matter, it does not limit the motion for release that the BOP makes on behalf of the defendant to the motion that the defendant has asked to be made.") (emphasis added). *But see Bolino*, 2020 WL 32461, at *2 (explaining that a court should examine "whether there are ***material differences*** between the application rejected by the BOP and the one placed before the Court; if there are, then the claim has not been exhausted" as otherwise the exhaustion requirement would be "eviscerate[d]") (emphasis added). In a similar vein, when a defendant has exhausted a compassionate-release request based on serious medical conditions before the outbreak of the COVID-19 pandemic, courts have not viewed the effect of COVID-19 on the medical conditions as a separate issue requiring exhaustion. *See, e.g., United States v. Garner*, 2020 WL 3632482, at *3 (S.D. Tex. July 3, 2020) ("COVID-19 does not constitute an independent basis for a RIS [reduction in sentence] and/or compassionate release. ***Defendant has not changed the underlying basis of his request*** for a RIS or compassionate release by this motion; to the contrary, he argues that COVID-19 renders him even more medically vulnerable than before. In short, Defendant argues that the COVID-19 pandemic increases his already-existing medical vulnerability, which he has already exhausted. The Court finds that Defendant has exhausted his administrative remedies … .") (emphasis added); *see also United States v. Resnick*, 2020 WL 1651508, at *6 (S.D.N.Y. Apr. 2, 2020) (disagreeing with the government's argument that the operative request was not the defendant's first request, submitted on the brink of the COVID-19 pandemic outbreak and which had gone 30 days without response from the warden and was thus exhausted, but rather the defendant's second request, submitted by his attorney, which relied specifically on his particular susceptibility to COVID-19, and for which 30 days had not yet lapsed).

Just as the additional conditions listed in Delco's second request are not new grounds requiring exhaustion separately from his first request, neither are those conditions new grounds which would restart the process after having received an unfavorable decision from the warden on the first request. *See United States v. Scott*, 2020 WL 3453139, at *2 (D. Del. June 24, 2020) (defendant did not present evidence that he had appealed first request which was denied by the warden, nor was it clear whether a second request "raised new grounds requiring exhaustion" or whether he

### *2. Extraordinary and compelling reasons*

Even if Delco had exhausted his administrative remedies, his motion is without merit. Delco has not shown that his age (49),[31] race (African-American), gender (male), or any of the medical conditions identified in his requests or motion (hypertension, previous back surgery, neck and leg nerve damage, high cholesterol, a heart murmur, allergies, and asthma) elevates his risk of becoming seriously ill from COVID-19 as to satisfy the "extraordinary and compelling" standard necessary for a reduction in sentence or compassionate release. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Chambers*, 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (denying motion for compassionate release for 51-year-old African-American male defendant with hypertension and other alleged medical conditions, explaining that "courts have found that hypertension does not amount to an extraordinary or compelling reason for release" during the COVID-19 pandemic) (collecting cases); *United States v. Green*, 2020 WL 3642860, at *4 (W.D. Pa. July 6, 2020) (denying motion for compassionate release for 39-year-old defendant, explaining that while data suggests that African-Americans have been disproportionally affected by COVID-19, it is unclear whether race is an independent risk factor or whether adverse outcomes are caused by other factors, and that the court is unaware of evidence that high blood pressure stabilized and controlled by medication or a

---

had exhausted administrative remedies for the second request). In other words, by merely filing a second, more specific request, a defendant cannot subvert the requirement that he fully appeal the warden's initial denial of his request before bringing a motion in court. To hold otherwise would signal that in order to bring a motion for compassionate release in court, a defendant could simply list one medical condition one request at a time, until one went unanswered for 30 days, rather than having to go through the administrative appeal process following the denial of his original request. Defendants should list all then-existing conditions and grounds potentially giving rise to relief in one request and see that request through the administrative process, as contemplated by § 3582(c)(1)(A).

[31] Delco's BOP Progress Report confirms that he is 49 years old and does not turn 50 until the end of 2020. *See* R. Doc. 219-1 at 2.

heart murmur places one at greater risk of COVID-19); *United States v. Williams*, 2020 WL 3415594, at *2 (E.D. Mich. June 22, 2020) (denying motion for compassionate release for 51-year-old defendant, explaining that his current medical conditions, nerve damage and "drop foot," are not fatal or unmanageable, nor are they recognized as conditions which place him at a greater risk for contracting COVID-19 or suffering more serious reactions); *United States v. Brown*, 2020 WL 2542899, at *3 (E.D. La. May 19, 2020) ("Defendant is fifty years old, and does not point to any medical or family circumstances that would justify compassionate release. Rather, she argues for release on account of her allegedly increased risk of contracting COVID-19 based on her age, race, and gender. Even if these individual characteristics were to make her more likely to contract COVID-19, these factors do not correspond to the types of extraordinary reasons this Court must consider before granting compassionate release."); *United States v. Meeks*, 2020 WL 3344111, at *3 (N.D. Tex. May 18, 2020) (denying motion for compassionate release for 51-year-old defendant who stated he had mild asthma, thyroid disease, allergies, and nerve damage to his hand); *United States v. Koons*, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020) (denying motion for compassionate release for 60-year-old defendant allegedly suffering from high blood pressure, high cholesterol, and acid reflux).

Notably, Delco does not present evidence of all his alleged medical conditions, though he does show that he takes high blood pressure and nerve pain medications.[32] While the CDC has recognized ***pulmonary*** hypertension as a serious heart condition increasing the risk of severe illness from COVID-19, an increased risk due to hypertension (high blood pressure) is less clear. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

---

[32] *See* R. Doc. 219-1 at 20.

13

precautions/people-with-medical-conditions.html (last visited Aug. 6, 2020) ("[H]ypertension (high blood pressure) … *may* increase your risk of severe illness from COVID-19.") (emphasis added); *see also Koons*, 2020 WL 1940570, at *5 & n.10 (explaining that "it is unclear to what extent high blood pressure and/or high cholesterol are considered serious heart conditions for COVID-19 purposes," and noting that the "CDC's guidance names 'pulmonary hypertension' as a serious heart condition"). Delco's BOP progress report indicates that he is a "care level one" – meaning "healthy or simple chronic care" – "inmate who has some medical restrictions."[33] And his "ongoing receipt of medical care for his hypertension evidences that he is able to care for his high blood pressure within prison." *Chambers*, 2020 WL 4260445, at *3; *see United States v. Mazur*, 2020 WL 2113613, at *3-4 (E.D. La. May 4, 2020) ("Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated and whether granting the defendant compassionate release would have far-reaching implications, i.e. whether a large number of incarcerated defendants could be granted early release on the same grounds. … Notably absent from [the defendant's] motion is any assertion that the BOP is not providing him with adequate care.") (citations omitted).

Moreover, while the CDC has stated that the risk of severe illness from COVID-19 increases with age, 49-year-olds are not grouped among those with particularly high levels of risk. *See Coronavirus Disease 2019 (COVID-19): Older Adults*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 6, 2020) ("[P]eople in their 50s are at higher risk for severe illness than people in their 40s. … The greatest risk for severe illness from COVID-19 is among those **aged 85 or older**. … In general, your risk of getting severely ill from COVID-19 increases as you

---

[33] *See id.* at 4.

14

get older. In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged **65 years and older**.") (emphasis added).

Delco has failed to show that his risk of COVID-19 infection, severe illness, or complications rises to the level of "extraordinary and compelling reasons" for compassionate release or a sentence reduction under § 3582(c)(1)(A)(i), and thus his motion has no merit.

### C. Home Confinement

To the extent that Delco makes a separate request for transfer to home confinement, the Court has no authority to order such a transfer, as "it is well-established that the BOP has sole authority to determine an inmate's placement, with consideration given to a district court's non-binding recommendation" at the time of sentencing. *United States v. Reed*, 2020 WL 2850145, at *5 (E.D. La. June 2, 2020) (citations omitted); *see* 18 U.S.C. § 3621(b) (providing that the BOP "shall designate the place of the prisoner's imprisonment" and that "a designation of a place of imprisonment ... is not reviewable by any court"). Delco's request for home confinement would alter only his place of incarceration, not his term of incarceration, and so this request falls outside the Court's limited authority under § 3582(c) to modify a sentence. Only the BOP may grant or deny his request.[34]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Delco's emergency COVID-19 motion for reduction in sentence

---

[34] Furthermore, under the CARES Act, "the *Director of the [BOP]* may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code." *See* CARES Act § 12003(b)(2) (emphasis added); 18 U.S.C. § 3624(c)(1), (2) ("The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months ... under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry," including "home confinement"). Therefore, this Court lacks the power to grant relief under § 12003 of the CARES Act. *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020); *see also Miller v. United States*, 2020 WL 1814084 at *2 (E.D. Mich. Apr. 9, 2020) (collecting cases).

pursuant to 18 U.S.C. § 3582(c)(1)(A) and request for appointment of legal counsel (R. Doc. 219) is DENIED.

New Orleans, Louisiana, this 7th day of August, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE